HUNTINGTON, exec'r of Huntington, *vs.* GILMORE and Wife.

Where A., a few days before his death, and in his last sickness, deeded to his sister a farm on which she and her husband had resided for some years previous and did then reside, and at the same time told her there was personal property on the farm, naming some of it, that would be of no service to him, but might be to her, and that he "would give it to her," or said "I will give it to you;" the farm and personal property then being 14 or 15 miles distant, it was *held* that this was not a valid gift, either *causa mortis*, or *inter vivos*.

Gifts *inter vivos* or *causa mortis*, if by parol, require delivery.

Huntington *v.* Gilmore.

A *donatio mortis causa* must be delivered to the donee, or to some person for him, by the donor; and not by his executor or administrator. And there must be a continuing possession; and the gift must be made in the expectation of death; and be conditional, depending upon the event of the death of the donor, and be revocable by the donor in his life. It is a gift only upon survivorship; and is liable to the debts of the donor; and in fact, leaves the title in the donor, save only in a certain event.

Whether a subsequent will of the same property to a third person, revokes a gift *mortis causa? Quere.*

Mere words will not change the possession, or constitute a delivery of personal property.

Whether an action of replevin in the *detinet* will lie against the wife, where the detention is in fact the joint act of both husband and wife? *Quære.*

THIS was an action to recover possession of a horse and some cattle and farming utensils, alledged to be withheld from the plaintiff, executrix of J. F. Huntington, by the defendants. The defendants, who were husband and wife, denied the allegations of the complaint, and set up property in themselves, and also in the wife. The cause was tried at the Clinton circuit in February, 1852, before Mr. Justice HAND. The plaintiff proved the will of the testator, published on the 15th day of April, 1850, and letters testamentary thereon, and a demand of the property of the defendant, and there was proof tending to show a refusal by both of them. The defendants proved that the defendant Mrs. Gilmore was a sister of the testator; and that on the 12th day of April, 1850, he executed and delivered to her a warranty deed of the farm on which the defendants had for some years and then lived, and at the same time executed an assignment to her of a surveyor general's certificate of another lot. And on that day, and soon after delivering the deed, he said to her, as one witness testified, "he had some farming tools and other personal property there on the premises that was of no use to him and never would be, and he would give it to her," and named over some of the property. Another witness testified that he said, "there is some property on these premises that may be of some service to you, but never will be to me as I know of; I will give it to you." This took place at the residence of the testator, 14 or 15 miles from the farm conveyed by the deed and the property in question; most of the latter being

on the farm, where a portion of it had been some years. On what terms the defendants had occupied the farm did not appear. At the time of this conversation, the testator was sick with the consumption, and could sit up but little; and continued sick until his death, on the 4th of May, 1850. The judge decided there was no gift, either *donatio mortis causa, or inter vivos,* and that the property did not pass to Mrs. Gilmore; and the defendant excepted.

There was evidence tending to show that the husband and wife, on one occasion when a demand was made, went apart and consulted together and then came back, and she, in his presence, claimed the property and refused to deliver possession. The defendant's counsel insisted that the husband was not liable, unless the jury found evidence of some act of his wrongfully withholding the property. The court, in charging the jury, told them that if this evidence was *true,* it was a circumstance for their consideration in determining whether the husband had detained the property. To which charge the defendants excepted.

The jury found the property belonged to the plaintiff, and assessed the value, &c. And also that the husband was jointly guilty with the wife in withholding, &c. The defendants tendered a bill of exceptions, and upon these and some minor points moved for a new trial.

*R. S. Hale,* for the defendants.

*G. M. Beckwith,* for the plaintiff.

*By the Court,* HAND, J. Twenty-two days before the death of the plaintiff's testator, and during his last illness, he conveyed to one of the defendants the farm on which she and her husband, the other defendant, then lived. After executing the deed, he stated that there was personal property on the premises, that was of no use to him and never would be; and one witness says, he said "he would give it to her," and another, "I will give it to you." Most of the property in controversy was then on that farm; and I think the important question in the case

is, was this a valid gift of at least that part of it? As I view this case, it seems unncessary to consider whether this, if a gift at all, be a donation *mortis causa* or *inter vivos ;* for it is well settled that both require delivery. I am aware that some cases and expressions in the books seem to favor the position, that a gift may be valid without delivery, particularly, where the property is distant, as between the donee and a third person. (*Hudson* v. *Hudson, Lut.* 214. 16 *Vin.* 458. *Flower's case, Noy,* 67. *Note to* 1 *C. B.* 382. *Willey* v. *Bower, Clayt.* 135. 14 *Vin.* 19. *B. N. P.* 135. *F. N. B.* 91, *D.* 1 *Chit. Gen. Pr.* 104. *Spratley* v. *Wilson, Holt's N. P.* 10, *and reporter's note. Dunwich* v. *Sterry,* 1 *Barn. & Ad.* 831. 2 *Saund. R.* 47 *c, note d. Coke's remark in Wortes* v. *Clifton,* 1 *Roll. R.* 61.) But there can be no doubt at this day, that both gifts, *inter vivos* and *causa mortis,* if by parol, require delivery. (*Noble* v. *Smith,* 2 *John.* 52. *Harris* v. *Clark,* 3 *Comst.* 93. *S. C.* 2 *Barb. S. C. R.* 94. *Grangiac* v. *Arden,* 10 *John.* 293. *Craig* v. *Craig,* 3 *Barb. Ch.* 77. *Irons* v. *Smallpiece,* 2 *B. & Ald.* 551. *Ward* v. *Turner,* 2 *Ves. sen.* 431. *Roberts on Frauds,* 296, *note. Hawkins* v. *Blewitt,* 2 *Esp. Rep.* 663. *Jones* v. *Selby, Prec. in Ch.* 300. *Bunn* v. *Markham,* 7 *Taunt.* 225. *Reddell* v. *Dobere,* 10 *Sim.* 244. *Byron* v. *Brownrigg,* 9 *Ves.* 1. *Tate* v. *Hibbert,* 2 *Ves. jun.* 120. *Antrobus* v. *Smith,* 12 *Ves.* 39, *and Perkin's note.* 2 *Kent,* 438 *et seq.* 1 *Stor. Eq. Jur.* § 606 *et seq. Chitty on Cont.* 52. *Plowd.* 12.) It has been said that a gift by deed may be valid without delivery. (*Chitty on Cont.* 52. *And see remarks of Maule, J. in Lunn* v. *Thornton,* 1 *C. B.* 381, *and reporter's note ; Abbott, C. J. in Irons* v. *Smallpiece, supra ; Ward* v. *Audland,* 16 *M. & W.* 871 ; *Coteen* v. *Missing,* 1 *Mad. R.* 276. 2 *Kent,* 438 ; *Antrobus* v. *Smith, supra ; Edward* v. *Jones, supra. Lawson* v. *Lawson,* 1 *P. Wm.* 441 ; *Price* v. *Price,* 8 *Eng. L. and Eq. Rep.* 271.) But there is no pretense of a written conveyance of this property. A donation *mortis causa* is, in some respects, in the nature of a legacy. But it must be delivered to the donee or some person for him, by the donor, and not by his executor or administrator, and there must be a continuing

Huntington *v.* Gilmore.

possession. The gift must also be made in expectation of death; and be conditional, depending upon the event of the death of the donor; and be revocable by the donor during life; and is a gift only upon a survivorship; and is liable to the debts of the donor. It, in fact, leaves the title in the donor; save only in a certain event. ( *Walter* v. *Hodge*, 2 *Swanst.* 98. *Blount* v. *Burrow*, 1 *Vesey, jun.* 547, *and Hoveden & Sumner's notes.* *Tate* v. *Hilbert*, 2 *Id.* 111. 8 *Petersd.* 464, *n.* *Hills* v. *Hills*, 8 *M. & W.* 401. 1 *Kent*, 444 *et seq.* 1 *Chitt. Gen. Pr.* 104. *Edwards* v. *Jones*, 1 *My. & Cr.* 221. *Wells* v. *Tucker*, 3 *Binn.* 336. *Moore* v. *Darton*, 7 *Eng. L. and Eq. R.* 134. *And see, as to civil law, Inst.* 271; *Domat. p.* 1, *B.* 1, *tit.* 10.) Perhaps if this had been a valid gift *mortis causa*, it would have been avoided by the will subsequently made. ( *Jones* v. *Selby*, *supra.* *Hambrooke* v. *Simmons*, 4 *Russ.* 25. 1 *Chit. Gen. Pr.* 105. *And see* 2 *R. S.* 60, § 22; *Id.* 64, §§ 42, 43.) Though the legacy was to the same person; and besides, the case did not necessarily turn on that point, in *Jones* v. *Selby ;* and *Hambrooke* v. *Simmons* leaves the matter in doubt.

Delivery being essential, was it proved? or should the evidence upon that subject have been submitted to the jury? The defendants contend that, as they were in use of the property, and in the possession of the farm, of which the testator had just executed a deed to Mrs. Gilmore, no further delivery was necessary. The case shows that the testator owned the farm; that the defendants, husband and wife, resided upon it, but upon what terms they occupied the farm, or used the personalty, (if at all,) is not stated. The fair intendment from the testimony, perhaps, is, that Gilmore, the husband, occupied it in some way, under the deceased. A few weeks before, Gilmore disclaimed any ownership of the farm or personal property, and was, probably, in possession as a servant of the deceased. If he was a tenant from year to year of the farm, even though Mrs. Gilmore should be considered as sole owner thereof, under the statutes for the protection of the property of married women, ( *Laws of* 1848, *ch.* 200 ; *Laws of* 1849, *ch.* 375,) she can hardly be said to have been put into actual possession by the delivery of the deed.

But considering her to have been in possession of the farm constructively, or as matter of law, by virtue of the deed, there was no sufficient delivery of the property in question to support a gift, either *inter vivos* or in prospect of death. There was no actual change of possession. Had the title to the personalty passed by the gift, the possession, at least constructively, might have followed. But that legal intendment is a consequence of title, and does not create it. The property was several miles distant, and there was no act; nothing but words. Even had it been in sight, words would not have transferred possession. (*Shindler* v. *Houston,* 1 *Comst.* 261, *and cases there cited.*) Merely saying "I give," without any act or writing, does not transfer property. (*Tate* v. *Hibbert,* 2 *Ves. jun.* 120, *per Ld. Rossyln. Hedges* v. *Hedges, Prec. in Ch.* 269. *Gardner* v. *Parker,* 3 *Mad. Rep.* 184.) Much less, "I will give." There must be some actual tradition, or physical dominion. The circumstances of the case of *Shower* v. *Pilch* were similar to this case, though perhaps more favorable to the donee. (4 *Exch R.* 478.) It was decided in the English court of exchequer in 1849, and illustrates the rule above stated, and also shows that these words are not words of a gift *in presenti.* The case was trover for silver plate. The plaintiff's testator, while residing with the defendant, his daughter-in-law, who then had possession of the plate in question, said to her, "I will give you all the plate that is mine." There was no actual delivery. At the trial, Wilde, chief justice of the common pleas, held that a mere verbal gift, without delivery, did not transfer the property, and the court of exchequer affirmed his decision. The two judges who gave opinions also intimate that the words were in the future tense.

As we have seen, a donation *mortis causa* is liable for the debts of the donor. And the executor and administrator is now considered also the representative of the creditor. (*Babcock* v. *Booth,* 2 *Hill,* 181.) But the plaintiff has not shown a deficiency of assets. However, on the other point, the case seems to be with the plaintiff.

There has been some difference of opinion as to the extent of the liability of the wife for torts committed with, or in presence of her husband. And it has been said, that if a tort be committed in the company of the husband, he alone is liable. (2 *Kent*, 149.) That " if goods be delivered to husband and wife, no action of detinue lies against them both, for these, but against the husband alone." (*Doddridge, J., in Isaac* v. *Clarke*, 2 *Bulstr.* 308. 3 *B. & Ald.* 689, *n. a. And'see* 2 *Saund. R.* 47, *t, n.* 1, *6th ed.*; 1 *Chit. Pl.* 80, 113.) And, as a general rule, if the wife acquires goods, they immediately become the property of the husband; and a conversion of the goods of another, is considered to his use. And it is said, she cannot possess personal property. (*Clancy's Rights of Mar. Women*, 1 *et seq. Co. Litt.* 351, *b. Blanchard* v. *Blood*, 2 *Barb.* 352.) And if the conversion of goods be the joint act of them both, the conversion is held, in law, to be the act of the husband only. (2 *Saund. R.* 47, *t, note. Draper* v. *Fulkes*, Yelv. 165; *S. C.* 4 *Vin.* 188. *And see Bing. on Cov.* 255, *n.* 257; 4 *Vin.* 197.) On the other hand, it has been held that an action of trespass would lie against both, although a conversion to their own use was also alledged. (2 *Saund. R.* 48, *t, n.*) And that a declaration in trover against them jointly, charging a conversion to their own use, was good after verdict. (*Keyworth* v. *Hill*, 3 *B. & Ald.* 685.) And that an action of trespass would lie against them for a joint act. (*Vine* v. *Saunders and wife*, 4 *Bing. N. Cas.* 96.) And the wife may be convicted of a crime, though committed in the presence of her husband, notwithstanding the presumption of law in her favor on the ground that she is *sub potestate viri.* (1 *Russ. on Cr.* 18, 20.) But it is not clear that an action of replevin in the *detinet* will lie against the wife, where the detention is in fact the joint act of both, as in this case, as appears by the verdict. (*See Harvey* v. *Gulston*, Noy, 107; 4 *Vin.* 195.) Probably the acts of 1848, (ch. 200,) and 1849, (ch. 375,) do not affect the case; because, in truth, the wife had no title; and again, there was no allegation in the pleadings that she held the property to her sole and separate use; nor was the pretended

gift on those terms.   However, no exception appears to have been taken at the trial on this point of the wife's joint liability.

A new trial should be denied.

[FULTON·GENERAL TERM, September 6, 1852.   *Hand, Cady* and *C. L. Allen,* Justices.]